Decker v. Positec USA, 2015, 16, 46, and 47. We'll hear from Mr. Brock when he is ready. Good morning. May it please the Court, Black & Decker submits that the Board's decision holding Claims of the Patent Institute unpatentable under Section 103 in view of MAC is legally improper not only because it finds that MAC is analogous art, which is against the clear preponderance of evidence to the contrary, but also because the Board completely fails to explain why a person of ordinary skill in the art would have modified MAC to arrive at the claimed invention. Well, that's an interesting question, but surely it's analogous art, isn't it? You're talking about trimmers. Well, but hair trimmers, of course, are completely different from... We've been told by the Supreme Court in KSR that relevant art is broader than was thought before, and you're talking about trimming. I don't believe that the Supreme Court in KSR said that we should expand the scope of relevant art. The issue in KSR was whether or not the relevant art was properly combinable in an obvious manner. In other words, that was a motivation case. All of the prior art, under consideration by the Supreme Court in that case, was not only directly related to automotive braking systems, they were directly related to adjustable pedals for automotive braking systems, so there was no question that all of the art that the Supreme Court was considering in that case was analogous art. What we have here, though, is your 417 patent, and the specification specifically states that your invention is applicable, it should be deemed applicable to any small electric tool or appliance that includes a small electric motor. That would seem to encompass what Mack is talking about with its small electric appliance, which includes a small electric motor. Again, because that's using the interpretation of the word small as to mean anything that's not big. In fact, as the evidence of record... The board gets to read these references as fact findings, and then we must defer to those fact findings for substantial evidence. If they read small to include handheld electrical appliances, why is that an unreasonable reading in light of the express statement in the specification? First of all, that statement in the specification, as we indicated in our brief, is a statement of the applicability of the teachings of the invention. From that perspective, you're talking about now that you know what the solution to the problem is, the applicability of those teachings apply to, and they use the word small appliances. In that context, as stated by our expert witness, small refers to the fact that in tools of this type, motors are characterized as being small. In the universe of motors, motors and outdoor power tools are considered to be small, as opposed to large motors in appliances such as washing machines and dryers. That doesn't include a miniature DC motor, which is an order of magnitude smaller than the motor that you'd use in an outdoor power tool. Again, that's a statement that it's important to understand how one of ordinary skill in the art would interpret that statement, and the only evidence of record is that one of ordinary skill in the art would not understand that statement to include a device such as the hair trimmer in Mac. Beyond the point about whether or not Mac is analogous art, which, as I've indicated, we don't believe it is, more importantly, the board has completely failed to explain why a person of ordinary skill in the art would have modified Mac to arrive at the claimed invention. Instead, as to the critical distinctions between the Mac reference and the limitations in claim 16, such as the requirement that the motor be fixedly secured to the mounting plate, the board simply concludes that Mac suggests the limitation. Citing a passage which states, and I quote, the motor is positioned and supported against rotation by the snug fit of the bearing portion in the aperture, close quote. How this statement suggests the fixedly secured limitation, the board doesn't explain. Well, maybe what the board was trying to say was Mac already contemplates that you don't want the motor to be spinning during the operation of the device, and so that's why Mac discloses the use of a yoke and the flat section in order to keep the motor from spinning. And so the idea is, well, what are some other ways that we know that are well-known and conventional to keep the motor from spinning? Aha, screws would be a way to do it. So assuming that's what the board was getting at, then why is that wrong? Well, first of all, the use of the yoke to keep the stator of the motor from turning when the motor is energized, that of course is wholly conventional. You have to support the stator relative to the housing so that just the armature turns rather than the stator. The reason why they use a yoke is because that's the simplest thing to use in that application in order to achieve that function. There's nothing in Mac that suggests that you would take the extra steps to now fixedly secure it to that plate portion of the gear casing because it serves no functional benefit and it significantly increases the cost and the complexity of assembling the device. A person of ordinary skill in the art, as the evidence of record supports, would not do that for no benefit. There's no benefit to be gained by fixedly securing the motor to the plate portion of the gear casing in Mac. That simple spring clip is good enough and it's much simpler to install in a production process. Do you think a motivation to combine or a motivation to modify always must have an extra additional benefit attached to it? I guess my question is, what if it was just known in the art that there were many equivalent ways of doing this attachment? A lot of different ways. Would they all be obvious or must there be some kind of extra special advantage using a particular alternative on top of the one that's disclosed in the prior art reference for there to be a motivation? There has to be an advantage when it's going to add to the cost of the manufacturer of that product because that's a significant disadvantage. Therefore, to suggest that somebody of ordinary skill in the art would have done that and incurred that disadvantage for no offsetting benefit is improper. That's exactly what the evidence in this case supports. The spring clip in that application was good enough and it would significantly increase the cost of assembling not only the time but the cost of assembling that part if you had to deal with, recognize these would be very tiny screws you need. You're talking about a motor in this device that is no bigger than the size of your thumb. If the whole point is in this industry it's well established that we're trying to reduce the number of components as much as possible. We're trying to ease the complexity of assembly as well as reduce the cost. The profit margins are super thin so we're doing everything we can to simplify, simplify. Why would we take an already simple, elegant solution of the yoke and then rip that out and now have to deal with a bunch of screws? For no functional benefit in that application, that's exactly right. That's exactly right. Of course, that's one of the significant reasons why the present invention is unobvious because looking at where the inventors were starting from as demonstrated in that Laverick patent, that is an elegant design. There are no additional parts there. Imagine how easy it is to assemble that. You just simply take the motor and you place it into one half of the housing and then you close it with the other half and now it is completely supported at all those various points that it needs to accommodate the kind of working environment that's going to be operating in. That was a beautiful design and that's why it wasn't obvious to one of ordinary skill in the art why you would move away from that design. To save cost because it goes against what any person of ordinary skill in the art would normally do. They wouldn't think of adding cost and complexity to actually take cost out of a product. I guess the idea would be, again, there's so many different contact points in Laverick that there's ribs, there's flanges, there's all kinds of support components. All of that could be removed, which would achieve the goal of reducing complexity in the manufacturing of the housing. Remember, all those ribs are formed during the molding process. There's no extra steps associated with the molding process in order to achieve those ribs. Once you have created the tooling to do that, it happens during the molding process. What was critically required in that molding process, however, because those ribs have to have very, very tight tolerances, all those various features in Laverick, you need to have a material that is very, very temperature stable because you're looking at surfaces that have to hold tolerances within a few thousandths of an inch. Nonetheless, it makes it very simple to assemble that product. That's one of the significant advantages of the present invention was the recognition that we can get away with using cheap plastic if the only critical dimension we have is so small that even if it shrinks by five percent, it's still within the critical dimensions, the critical tolerances that we need. That's what enables the use of that very simple, that very cheap plastic material, which takes out the cost and more than makes up for the fact that we've now added some additional components. It is so contrary to what one of ordinary skill in the art would normally do. Mr. Buck, do you want to save the rest of your time for a bite? Thank you. As you requested. Mr. Eichenberger, you are yielding two minutes of your time to the patent office, Ms. Craven, and of course you want to save a couple of minutes. Yes, Your Honor, two minutes. If there's rebuttal on cross-appeal, if there's something to be rebutted. Okay. Thank you, Your Honor. May it please the court. In its final written decision, the board did a lot of things and got it right with regard to finding Claim 16 and 17 obvious over MAC. There was some questioning in appellant's opening regarding whether or not MAC is analogous art, and in fact the board did get it right. It is analogous art for several independent reasons. First and foremost, as Your Honor pointed to the 417 patent itself. I'm more troubled by the board's obviousness and analysis on the motivation to modify MAC. That analysis looked particularly thin, arguably conclusory, in just saying, without much support, that MAC itself suggests this claimed invention. At least for me, when I read MAC, I don't see any suggestion of replacing the yoke with screws, when the whole point is to try to reduce the number of component parts and make it as simple and cheap as possible to make this trimmer, assemble the trimmer. Your Honor, with all due respect, I think there is quite a bit of teaching in MAC and the board cited to that. For instance, MAC deals itself with not just the concept of reducing costs. It has its goals minimizing complexity and also keeping things quiet. What the board was referring to in the decision with regard to its findings about the motivation is that it is addressing the same problem. Some of the same problems that the 417 patent addressed. Why don't you show me in MAC, I have it here in front of me, gloriously only three pages long, so why don't you show me in MAC what language you think would satisfy that motivation to replace the yoke with the screws? Okay. What language in MAC should I focus on? The language in MAC, if I could, needs to be kept in mind with regard to what the state of the art is and what the ordinary skill level is. The technology involved here is a very simple mechanical device. It is a motor, fixedly secured to a plate that resides in the groove of a housing. When a person of ordinary skill in the art, it is important to note that the obviousness of the analysis is directed to that person, not the patentee itself. Please get to your answer to my question. The board said MAC suggests this. The board didn't say one of skill in the art would, based on common sense, be able to do this. The board's only conclusion was that MAC suggested it. I want you to show me precisely where in MAC MAC suggested it. Okay. We're looking in column one at the first. Column one, line 17 through 21, and 26 through 34. Both of those sections talk about the desire to fix certain things in the prior art, one of which is being noise from high motors. You're talking in too great a generalization once again. Column one, you said line 17. Are you talking about the word that begins disadvantageously? Yes, I'm sorry, that's 19. You're right. Okay. Disadvantageously, as is known in the art, see the 365 patent, when these reciprocating cutting blades have high motor and blade speed, the noise is a deterrent to its use. Okay, so how does a recognition that a noise is problematic suggest replacing the yoke with screws? That's a very precise suggestion. I understand. And so additional, I didn't get to finish in column one, so at lines 30 through 34. Why don't you give us your best citation first? Okay, so the best citation is that the problem that MAC is addressing is fixing noise that is coming from inside the housing of the trimmer. And so one of the things that it discusses that is causing that is inappropriate contact or improper frictional contact inside the housing. And so a person of ordinary skill in the art, who in this case has a bachelor's degree in mechanical engineering, would understand that reading this and knowing that that's what you're trying to fix, what you would do is fixedly secure that motor to the plate to put that into the groove. MAC itself seems quite satisfied with using the yoke to harness the motor or secure the motor inside the device. And so it doesn't seem to be concerned at all with any motor noise with its particular embodiment. Your Honor, with this is, the yoke was okay for this hair trimmer, and that is correct, in the fact that it is a smaller version of a small handheld device. But a person of ordinary skill in the art, when looking at MAC and understanding what it's teaching to move that up to a bigger motor that has higher torque, you would likely need to do something to fixedly secure that. So I guess that's what I was wondering, is part of this rejection a requirement that we are transitioning from a hair trimmer to a string trimmer? Or is it just purely a question of what would one of ordinary skill in the art looking just at MAC do to MAC alone, without thinking about string trimmers at all? Because right now, as the Board construed it, this claim isn't restricted to outdoor power tools. It's just any tool with these various limitations residing in the body. So now we go look at what MAC says, and you're not thinking about string trimmers anymore. You're not thinking about outdoor power tools. You're just looking at MAC in isolation and wondering what would be obvious variations of MAC alone. Correct. So in that context, now I'm wondering why would anybody try to make the assembly more complex, arguably more costly, when MAC says that's what you're supposed to get away from. That's the whole object of his invention, is to reduce cost and complexity. It does talk about noise, but it doesn't seem to give any hint that there's a problem with noise with its particular conception of using a yoke to secure the motor. So, your honors, I would direct your attention to column 3, lines 18 through 24. And that is the portion of MAC's specification that deals exactly with how the motor is fixedly secured in the MAC trimmer. And it is not just the yoke that does it here. It is the combination of the snug fit of the bearing portion. This is in figure 3. 27 inside the aperture, so that's the first connection. It's also tension on the yoke, as your honor mentioned. And thirdly, it's the sandwiching of the flat portion, which is the plate 45, between the inner wall 62A and 62B, which is the groove. So it's that combination of things that come directly from MAC that is the way that they dealt with it. So it was not just the yoke to prevent the types of movement that they were worried about inside the housing. Right, but we're talking about mounting the motor to the plate assembly, right? Yes. And so you're saying these are the three things that were done to do that? Yes. I am saying that that's the way a person... You know, the board concluded that that arrangement does not fixedly secure the 45 flat portion and to the motor. That's correct, your honor. And the reason the board found that is because it improperly construed the claim term fixedly secure to prevent all relative movement. And that is part of our cross appeal and that we don't believe that that is a proper claim construction of that term. In fact, there were portions of the 417 patent that did discuss how things can be fixedly secured and not be, quote, rigidly coupled, which is what the board latched onto from the preferred embodiment in the 417 patent in order to come up with its claim construction of preventing all relative movement whatsoever. And so that was the basis for the finding. MAC was cited in the original prosecution history of this patent. Is that right? Correct. MAC was cited. And the examiner asserted a 102 rejection based on MAC. That is correct. And then the applicant, now patent owner, came back and said they distinguished MAC by saying MAC's yoke is not fixedly secured to the motor. Right? That's one... And then the examiner granted the patent. So they said two things. They characterized MAC as not having the plate fit within the groove, which is not... I mean, from the plain teaching of MAC itself, it shows and teaches that it is in the groove. So they characterized it as not fitting inside the groove, which helped them get by that reference by adding the circumferential groove limitation to get around MAC. And LAVRIC was not at issue here at that point either because it hadn't been disclosed. So LAVRIC showed the groove that we're discussing as well. But am I wrong that I thought that they proclaimed in their prosecution history that MAC's yoke and flat portion does not fixedly secure the motor to the mounting assembly? They did say that. They did say that. Yes. So they essentially disclaimed this particular attachment as an attachment that fixedly secures the mounting plate to the motor. Based on a belief that the spring grade wire of that yoke was not able to fixedly secure, which is part of the claim construction that we're challenging, we don't think that that is appropriate because it can prevent... it can allow some relative movement. So it wasn't just that argument that got them around MAC. It was the argument that it wasn't in the groove either, which plainly it is in the groove in MAC. The plate 45 goes in between 62A and 62B. Counsel, do you want to save your two minutes? Yes, Your Honor. Thank you. Ms. Brayman has two minutes. May it please the Court. The PTO's intervention in this matter is limited to a single issue on the merits of Black & Decker's assertion of prosecution disclaimer for its preamble outdoor power tools. Counsel hasn't discussed it in oral argument, so I'll just briefly say that our position is that the doctrine simply doesn't apply automatically in the same procedure to contemporaneous statements of claim scope and that Black & Decker had and should have taken the opportunity to amend their claims to add the outdoor power tool to the body of the claim as a limitation. Unless there are any questions, I'll yield back. The patent's expired now, right? No, I believe it expires in 2017. Expires in 2017? You may have... I may be incorrect, but I thought that it was not until next year that it expires. But regardless, that may change the claim construction BRI versus a Phillips construction, but it wouldn't change how the doctrine of prosecution disclaimer and how we would be arguing that. It's what they seem to want is to be able to make a narrower claim so contemporaneous statement to disclaim... Yes, but if the patent has expired, if you're wrong and the patent has expired... The same argument, Your Honor. How can they amend? No, your argument was... Right, that is true. They can't disclaim because they can amend and amendment would be the proper procedure. No, they can't disclaim regardless, but if their patent hasn't expired, they do have an opportunity to amend. I don't recall anything in the briefing where they said that that was not open to them or that they couldn't amend. I believe the patent hasn't expired, but regardless, even if the patent has expired and they couldn't have amended their claims, that still doesn't change the prosecution disclaimer doctrine to allow them to just contemporaneously state a claim scope for a preamble and have it automatically have effect in the same proceeding. The doctrine definitely applies in any PTO proceeding where statements are made to obtain a patent as Omega says and as this court said in Tempo, the court, the examiner... It appears to be the PTO's argument that the doctrine  disclaimer does not require the board to give effect to contemporaneous argument-based disclaimer. Is it the position of the PTO that because I understand that there is I really sense that this brief is carefully worded in that you are not required to accept a disclaimer but apparently you are able to? Is that right? It's not the case that it can never be accepted. It's only that if you say it can't be accepted, you should go amend instead then you're allowed to do that. Correct. Let me see if I can represent you. The examiner or the board can accept a construction of the claim or a statement as to the scope of the claim and that would be a disclaimer if then you obtain the patent if it comes out of a procedure. The board is the examiner or the board is allowed to accept such disclaimers but they do not always have to accept. They do not have to accept. That's their position. They don't have to accept a claim construction just because it's framed as a disclaimer of claim scope. I guess the question is does there need to be some kind of underlying premise for the examiner or the board to say this is a close claim construction question I can go either way on this but because the applicant or patent owner is urging one construction over the other I'll accept that and know that this expressed disclaimer will be bound up in the ultimate claim construction of this claim. That's one approach. Another approach could be I don't agree with this patent owner. I think this claim means something else but I will in my discretion elect to adopt this applicant or patent owner's construction of the claim through his argument. Is that a proper way for the agency to use and rely on statements made by applicants and patent owners? I think the former is if there's a claim construction that the examiner agrees with if they agree based on how or the board if they agree that the way the scope under BRI is being argued by the patent owner that gets over prior art based on how the claims could be construed yes but I don't think the examiner or the board should be changing their claim construction because necessarily because there is a disclaimer I think the board has to look at what would be the construction of the claim and how that argument How is that consistent with many decades of precedent that allows a patent owner to say you can be your own lexicographer and do so either in the patent specification or the prosecution history that's true you are correct maybe I'm being too rigid in how the board thinks it will be clear to the public what the scope of the claims are Is the PTO position in the future that a patentee can only be a lexicographer during prosecution as opposed to in the spec if the PTO accepts it if the result of the procedure is that the patent is granted in the prosecution or reexam certificate issues yes but the board what I'm trying to make clear is the board doesn't have to say because you said it because you say this is your claim construction we have to agree with you how is that consistent with the lexicography precedent I think the board and the IPR is construing the claims your argument was this should be treated the same as prosecution so don't suddenly cordon off IPR is a different animal the board is doing a claim construction argument where examiners aren't required to give a specific claim construction for every limitation of the claim it comes down to a fight about the prosecution and the board is coming up with a claim construction based on looking back at the prosecution history for disclaimers of claim scope you are correct statements made to obtain the patent should be given effect in the subsequent IPR but there was no requirement of the board here not to construe the claims under BRI as any district court or the board and then come up with the right construction as opposed to accept the disclaimer what happens is the prosecution history has what the scope of the claims have been known to the   Thank you. We have two minutes of shared time. Mr. Brock has some rebuttal time. We'll give you five minutes. I want to go back to if I may the point concerning the analogous art because in the factual findings of the board there is a significant inconsistency. The factual inquiries include the requirement to define in the context of defining the person of ordinary skill in the art the identification of what is the pertinent art. And in this context that has been defined and it is uncontested as a technician with several years of practical experience developing electric motor powered outdoor power tools or a person   skill   of locksmithing. The jury instruction appears to define the pertinent art in an uncontested manner is defined as electric motor powered outdoor power tools. As this court has recognized and I'm quoting the court. The district court instructed the jury without objection based on the perspective of a person of ordinary skill in the field of locksmithing. The jury instruction appears to define the field of endeavor as locksmithing. This court has already made the specific correlation that talking about what is the pertinent art is consistent with what should be the field of endeavor. The board has adopted a significantly broader definition for what is the field of endeavor given what is the pertinent art in defining a person of ordinary skill in the art. Without any explanation we believe, again, that is clear legal error. Thank you. Thank you, Mr. Brock, and I think there's no opportunity to rebut on the cross appeal. The case will be taken under advisement.